## SETTLEMENT AGREEMENT AND RELEASE

This is a Settlement Agreement and Release ("Agreement") between Pilates Bodies NY, Inc. (hereinafter "PBNY") and Daniella Levi (hereinafter "Levi"), and their respective parents, subsidiaries, affiliates, successors, assigns, divisions, past and present officers, owners, shareholders, directors, principals, employees, former employees, representatives, service providers, counsel, and/or agents (whether in their personal or official capacity), and each of their respective successors and assigns, on the one hand (collectively hereinafter the "Defendants"), and Marcos Leyton and his family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (hereinafter "Plaintiff" or "Leyton"), on the other hand. The Defendants (PBNY and Levi) and Leyton may each be referred to as a "Party," or together, be referred to herein as the "Parties." This Agreement is effective as of the date on which it is executed by all Parties (the "Effective Date").

**WHEREAS,** Leyton has commenced an action against Defendants in the United States District Court for the Eastern District of New York (hereinafter the "Federal Court") styled as <u>Marcos Leyton v. Pilates Bodies NY, Inc., et ano.</u>, Case No.: 1:15-cv-4769 (FB) (SJB) (the "Federal Court Action"), alleging wage and hour violations under the Fair Labor Standards Act (hereinafter "FLSA") and the New York Labor Law (hereinafter "NYLL").

**WHEREAS,** Defendants deny that: (i) Leyton was entitled to protection under the FLSA and NYLL; (ii) they were Leyton's employer; (iii) they failed to pay Leyton any monies owed to him; (iv) dispute the number of hours Leyton claims he worked, and (v) PBNY, Ms. Levi, and Leyton meet the enterprise coverage and/or individual coverage requirement under the FLSA; and

**WHEREAS,** the Parties desire to fully and finally resolve all differences between them on the terms and conditions hereinafter set forth;

**NOW THEREFORE,** in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, having been represented by counsel and the Parties intending to be bound, do hereby agree as follows:

1. **Non-Admission.** This Agreement is entered into mutually in order to avoid the costs, uncertainty, and vexation of litigation. The terms set out in this Agreement are a compromise settlement of disputed claims, the validity, existence or occurrence of which is expressly disputed by the Parties. This Agreement shall not be admissible evidence in any judicial, administrative, or other legal proceedings for any reason except to enforce the terms of this Agreement.

2. **Consideration.**

In consideration for Leyton' execution, compliance with, and non-revocation of this Agreement, the Defendants agree to pay Leyton the amount of Ten Thousand Dollars and 00/100 ($10,000.00) ("Settlement Payment"), which is inclusive of attorneys' fees and costs, and will be split as follows: (i) $6,666.67 to Leyton; (ii) $3,333.33 to "El-Hag & Associates, P.C." Time is of the essence concerning the Settlement Payment. The Settlement Payment shall be made within thirty (30) days of receipt of an Order from the Federal Court formally approving the contemplated settlement herein (which the parties agree to use their best efforts to obtain), a check made payable to "El-Hag & Associates, P.C. as attorneys" in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) shall be delivered to Leyton's counsel at El-Hag & Associates, P.C., <u>Attn</u>: Jordan El-Hag, Esq., 777 Westchester Avenue, Suite 101, West Harrison, NY 10604-3502.

   c. **Default**. If Defendants fail to tender the Settlement Payment in accordance with this Agreement, then this Agreement shall be null and void and Leyton may refile the Federal Lawsuit. The Federal Court shall retain jurisdiction over the enforcement of this Agreement, and any statute of limitations concerning the claims in the Federal Action shall be tolled until the Settlement Payment has cleared in El-Hag & Associates, P.C IOLA Account. Furthermore, if the Defendants default, the full release of all claims against Leyton shall remain in full force and effect, and Defendants shall be precluded from refiling the State Court Action.

   d. El-Hag & Associates, P.C must submit an executed IRS Form W-9 with a Taxpayer Identification Number (the "W9 Form") to Defendants' Counsel along with the executed settlement paperwork in order to receive the Settlement Payment. The Defendants and their counsel shall not submit El-Hag & Associates, P.C W-9 to any court or tribunal in connection with the approval, or in any other manner cause the W9 form to become public record.

   e. Leyton agrees and affirms that the Settlement Payment shall constitute the entire amount of monetary consideration, inclusive of attorneys' fees and costs, provided to him under this Agreement and that Leyton will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, or disbursements, in connection with any of the matters encompassed in this Agreement or any aspect of Leyton' relationship with the Defendants as limited by the releases in this Agreement.

   f. PBNY shall issue El-Hag & Associates, P.C a Form 1099. Leyton and El-Hag & Associates, P.C further agree that they shall each be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment. Leyton and his counsel understand and agree that no representation is made by or on behalf of the Defendants regarding tax obligations or consequences that may arise from this Agreement. Further, Leyton and his counsel agree to indemnify and hold harmless the Defendants from and against all liens, liabilities, interest, and penalties that may be assessed against or incurred by them as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against Leyton or his counsel on the Settlement Payment. Notwithstanding the foregoing, El-Hag & Associates, P.C and Leyton shall not be responsible in any manner whatsoever for indemnifying Defendants for any tax liability for any employer payroll taxes for which the Defendants are responsible, and shall not be required to defend against any action from a taxing authority of any kind for any investigation or litigation commenced by such taxing authority for any claim that Leyton was misclassified as an independent contractor.

  3. **Claims Released by Leyton.**

   a. In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, Leyton, and Leyton on behalf of his family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release and discharge the Defendants, the Defendants' parents, subsidiaries, affiliates, divisions, and/or related companies, and each of their respective directors, officers, shareholders, partners, employees, managers, members, agents, attorneys, and successors of the Defendants ("Releasees") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees and costs) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of Leyton's execution of this Agreement, that are based pursuant to the FLSA governing minimum

2

wage, overtime pay, wage payments, failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events, or omissions alleged in the Action.

        b.      This release and waiver of claims shall not be construed to impair Leyton's right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Leyton from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Leyton agrees to release and waive and hereby does release and waive his right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Leyton's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

    4.    **Leyton' Representations and Warranties**.    Leyton hereby represents, warrants, acknowledges, and affirms as follows:

    a.    that he has not filed or permitted anyone to file on his behalf, any complaints, charges or claims for relief against the Defendants with any local, state or federal court or administrative agency other than the instant Federal Court Action;

    b.    that he has been paid and has received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which he may be due for any reason, except as provided in this Agreement; and

    c.    that he has no known workplace injuries or occupational diseases.

    d.    Leyton agrees to indemnify and hold harmless the Defendants from and against any enforcement actions for child support.

    5.    **Response to Inquiries on Employment.**    Levi will not provide Leyton with an employment reference. If any prospective employer contacts Levi concerning their business arrangement with Leyton, Levi shall not offer any information concerning Leyton other than he was a Pilates trainer for PBNY from approximately January 1, 2013 through December 1, 2014.

    6.    **Jurisdiction.**    The substantive laws of the State of New York shall govern the validity, construction, enforcement and interpretation of this Agreement and venue for any dispute between the Parties shall be the Court. The dismissal with prejudice shall provide that the Court shall retain jurisdiction over the State Court Action and the Federal Court Action for the purposes of enforcing the terms of this Agreement. If the Court should refuse or decline to accept jurisdiction over the Agreement or any enforcement of same for any reason, the Parties agree an action to enforce this Agreement may be filed in the United States District Court for the Eastern District of New York.

    7.    **Severability.**    The provisions of this Agreement are severable. If any provision of this Agreement is held invalid, the invalidity shall not affect other provisions or application of the Agreement that can be given effect without the invalid provision or application.

8. **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns.

9. **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

10. **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

11. **Mutual Non-Disparagement.** Leyton and Levi agree that they each shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of each other in the eyes of an ordinary and reasonable person in the community.

12. **Representation by Counsel and Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

13. **Voluntary Agreement.** By signing in the space provided below, the Parties agree and affirm that:

   a. They have been advised to and have carefully read and fully understand all of the provisions of this Agreement;

   b. This Agreement is legally binding, and by signing it, Leyton understands that he is giving up certain rights, including his right to pursue certain claims against Defendants (inclusive of attorneys' fees and costs) from the beginning of time until the date of this Agreement;

   c. No promise or representation of any kind or character has been made by any Party or by anyone acting on their behalf (other than as provided for within this Agreement) to induce the other to enter into this Agreement, and no Party has been forced or pressured in any way to sign this Agreement;

   d. The Parties knowingly and voluntarily agree to all of the terms set forth in this Agreement, and intend to be legally bound by them.

4

**Pilates Bodies NY, Inc.**

By:_____     DATE: ____/____/____
    Daniella Levi
Its: President. By signing above, Levi represents that she is authorized to execute this Agreement on behalf of PBNY.

**Daniella Levi**

By:_____     DATE: ____/____/____
    Daniella Levi

**Marcos Leyton**

By: [signature]     DATE: 8/26/18
    Marcos Leyton

d. The Parties knowingly and voluntarily agree to all of the terms set forth in this Agreement, and intend to be legally bound by them.

**Pilates Bodies NY, Inc.**

By: _____[signature]_____   DATE: 8 / 23 / 18
Daniella Levi

Its: President. By signing above, Levi represents that she is authorized to execute this Agreement on behalf of PBNY.

**Daniella Levi**

By: _____[signature]_____   DATE: 8 / 23 / 18
Daniella Levi

**Marcos Leyton**

By: _____   DATE: ___ / ___ / ___
Marcos Leyton

5